# PORTER | SCOTT

A PROFESSIONAL CORPORATION
Carl L. Fessenden, SBN 161494
Matthew W. Gross, SBN 324007
350 University Ave., Suite 200
Sacramento, California 95825
TEL: 916.929.1481
FAX: 916.927.3706

Attorneys for Defendants
ANN EDWARDS, Previous Director of the Sacramento County Department of Human Assistance, in her official and individual capacity; ETHAN DYE, Acting Director of the Sacramento County Department of Human Assistance, in his official and individual capacity

UNITED STATES DISTRICT COURT,
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN REEDY,<br><br>      Plaintiffs,<br><br>v.<br><br>GAVIN NEWSOM, Governor of the State of California, in his official and individual capacity; DR. MARK GHALY, Secretary, Health and Human Services Agency, in his official and individual capacity; KIM JOHNSON, Director of the California Department of Social Services, in her official and individual capacity; ANN EDWARDS, Previous Director of the Sacramento County Department of Human Assistance, in her official and individual capacity; ETHAN DYE, Acting Director of the Sacramento County Department of Human Assistance, in his official and individual capacity; and ELOY ORTIZ OAKLEY, Chancellor and CEO of the Board of Governors of California Community Colleges,,<br><br>      Defendants.<br>_____/ | CASE NO. 2:21-cv-00223-TLN-CKD<br><br>**ANN EDWARDS AND ETHAN DYE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>Date: December 15, 2021<br>Time: 10:00<br>Location: Courtroom 24, 8th floor<br><br>SAC: 8/13/2021 |

{02499528.DOCX}

## I. INTRODUCTION

Plaintiff's Second Amended Complaint ("SAC") brings five claims for relief including: (1) 42 U.S.C. § 1983 14th Amendment equal protection clause violation, (2) 42 U.S.C. § 1983 14th Amendment due process clause violation, (3) 42 U.S.C. § 1983 Title IX deprivation of equal educational opportunity, (4) state law claims under California Constitution Article 1 § 7 equal protection violation and (5) California Constitution Article 1 § 7 due process violation. Plaintiff's SAC fails to state a claim for relief against Defendants Ann Edwards, prior Director of Sacramento County Department of Human Assistance, and Ethan Dye, current Director of Sacramento County Department of Human Assistance.

Plaintiff's claims should be dismissed under Federal Rule of Civil Procedure 12(b)(1) because they are barred by the Eleventh Amendment. The SAC also must be dismissed under Federal Rule of Civil Procedure 12(b)(6) because it lacks specificity and only makes conclusory claims regarding the involvement of Defendant Edwards and Defendant Dye in the denial of Plaintiff's CalWORKs benefits. Plaintiff's complaint fails to state a valid claim for relief. The SAC does not allege any degree of particularity involving Defendant Edwards and Defendant Dye—in fact their name is only mentioned in the caption and never once mentioned in the body of the complaint. There are no specific acts alleged by Defendants Edwards and Dye to support Plaintiff's claims, or how Defendants Edwards and Dye contributed to the denial of Plaintiff's benefits. The County only administers the State's CalWORKs program and the County abides by the rules promulgated through the Department of Social Services ("DSS") Manual on Policy and Procedures ("MPP"). The County does not get to decide which MPP rules to enforce or how the rules are applied, the County only administers and runs the program for the State within its County boundaries. Plaintiff merely speculates that the CalWORKs program was administered in a discriminatory way because more women were recipients of CalWORKs benefits than men. These conclusory statement do not survive a motion to dismiss. Furthermore, it is unclear from the complaint which Defendants are being sued for what conduct, and in which causes of action. As such, the Court should dismiss the SAC with prejudice because Plaintiff has already been permitted two prior chances to amended his complaint.

## II. FACTUAL BACKGROUND

### A. Background on CalWORKS Program

In 1996, Congress enacted welfare reform legislation known as the "Personal Responsibility and Work Opportunity Reconciliation Act of 1996." 42U.S.C. § 601 et seq. This legislation replaced the Aid to Families with Dependent Children program ("AFDC") and had as its purpose the transition of individuals from welfare to work. Pursuant to the federal legislation, California adopted the Welfare to Work Act of 1997 and established CalWORKs (California Work Opportunity and Responsibility to Kids). Cal. Welf. & Inst.Code § 11200 et seq. Like the former state AFDC, CalWORKs is funded in part by its federal counterpart (42 U.S.C. § 601 et seq.) now known as Temporary Assistance for Needy Families ("TANF"). Cal. Welf. & Inst.Code §§ 10100-10101, 11200.5. CalWORKs provides monthly cash benefits to custodial parents and relative caregivers, and provides ancillary benefits to people in need who are pursuing education to improve employment opportunities. The California Department of Social Services CalWORKs program is governed by a set of rules/regulations entitled the Manual of Policies and Procedures.

Applicants must demonstrate that: (1) they are a related parent or caretaker of a child (Department of Social Services Manual of Policy and Procedures (MPP) § 82-808.1; 82- 804.1), and (2) are responsible for the child's regular care. MPP §82-808.3. Once approved, caretakers are required to work or attend school with certain exceptions. Welf. Inst. Code § 11323.2; MPP §42-750. CalWORKs therefore provides certain ancillary benefits to aid caretakers seeking education or employment, including childcare (MPP § 47-750.111), transportation (MPP § 47-750.112), and school books. (MPP § 47-750.113.) Importantly, CalWORKs aid is limited; an applicant caretaker can generally only receive CalWORKs benefits for 48 months. Welf. & Inst. Code § 11454.

California counties are responsible for administering the CalWORKs program in conformity with federal and state laws and regulations. Cal. Welf. & Inst.Code §§ 10802, 11209. Both federal and state law encourage the implementation of procedures to detect and prevent fraud and abuse in the CalWORKs program. 42 U.S.C. § 602(a)(6); Cal. Welf. & Inst.Code § 11055.5. To this end, Sacramento County administers the CalWORKs program for the state to determine whether a parent is eligible for benefits, and whether a child is already receiving benefits through another parent.

As explained by the California Court of Appeal, under California Welfare and Institutions Code § 11050, "the state is responsible 'for maintaining uniformity in the public social service programs.' " Smith v. Los Angeles County Bd. of Supervisors, 104 Cal.App.4th 1104, 1109, (2002) (quoting Cal. Welf. & Inst.Code § 11050). To this end, the California Department of Social Services ("DSS") oversees the administering of the CalWORKs program by the counties. Id. (*citing* Cal. Welf. & Inst.Code §§ 10550, 10600). Consequently, the counties must follow the regulations promulgated by DSS which appear in its MPP and may not create new eligibility conditions for the receipt of welfare benefits. Id. at 1110 (*citing* Cal. Welf. & Inst.Code § 11209); Ramos v. County of Madera, 4 Cal.3d 685, 695 (1971) (holding that counties have purely ministerial authority in ensuring applicants for welfare benefits are eligible for such benefits since eligibility criteria are set by statute and DSS regulations at the state level)

To determine eligibility between caretakers, the county applies a multi-step process. MPP Section 82 states in part "when the child spends an equal amount of time with each parent and each parent exercises an equal share of care and control responsibilities, the parent who applies for aid shall be the caretaker relative, providing that the child's other parent is not currently applying for or receiving aid for the child." (MPP § 82-808.4) When each parent exercises an equal share of care and control responsibilities, and each has applied for aid for the child, the caretaker relative shall be determined in the following order: "(a) The parent designated in a current court order as the primary caretaker for purposes of public assistance, under Civil Code Section 4600.5(h); (b) When no court order designation exists and only one parent would be eligible for aid, the parent who would be eligible shall be the caretaker relative; (3) When both parents would be eligible, the parents shall designate one parent as the caretaker relative. The agreement shall be documented by a CA 13; [and] **(4) If the parents cannot reach agreement on the designation of a caretaker relative, the parent who first applied for aid for the child shall be the caretaker relative."** MPP § 82-808.413

Importantly, this initial eligibility determination does not preclude the second parent from receiving CalWORKs after the term of aid to the first parent ends or the parent otherwise loses eligibility. MPP §§ 82-808.413(b); 82-808.5. The second eligible parent can apply for CalWORKs aid when the aid to the first parent ends. MPP §§ 82-808.413(b). The child will thereafter be added to the second parent's

CalWORKs account (MPP § 82-808.5), and the second parent will receive cash aid and any ancillary benefits. Welf. & Inst. Code § 11323.2; MPP § 42-750.

**B. Plaintiff's Allegations in the Second Amended Complaint**

Plaintiff alleges that existing statutes, regulations, policies and procedures for the implementation of the California Work Opportunity and Responsibility to Kids ("CalWORKs") program preclude single fathers from having equal access to public benefits intended for the support and care of dependent children. Plaintiff also alleges that the regulatory framework discriminates on the basis of gender. Plaintiff is a disabled, unmarried father to one minor child born in 2018. Plaintiff's parentage was formally established in a court on August 2, 2018, and he obtained joint legal custody on October 18, 2018. Since May 22, 2019, plaintiff has joint and equal custody of the minor child.

The mother of plaintiff's child became eligible to apply for CalWORKs benefits at the fourth month of pregnancy to receive benefits during the fifth month. Plaintiff, in contrast, as an unmarried single father in a separate household in a separate county, remained ineligible after the child's birth and while he established paternity, while he went through the process of custody, and after he obtained joint and equal custody.

The mother of plaintiff's child sought to prevent or delay plaintiff in establishing parentage and custody, which resulted in initially impaired bonding between plaintiff and his child. When the court first granted joint legal custody, plaintiff had to comply with a "step-up parenting plan" under which he had to drive over 200 miles per week to spend weekdays with his child. During this time, the mother of plaintiff's child had primary physical custody of the child and received CalWORKs benefits. Plaintiff, in contrast, as a single male parent with less than 50/50 custody, remained ineligible despite his financial need and despite the extra financial costs he had to undertake in order to meet the requirements of the step-up parenting plan. After plaintiff obtained joint and equal custody

On July 25, 2019 Plaintiff applied for CalWORKs benefits. The County of Sacramento determined that since Plaintiff and the mother of plaintiff's child shared joint 50/50 custody of the child, therefore section (a) did not apply. Since both parents were eligible for aid and neither had designated one as the caretaker relative, MPP § 82-808.413(4) applied and the County determined that the mother applied first in El Dorado County. Under the regulatory scheme, an eligible child for CalWORKs

benefits shall be living in the home of a "caretaker relative" which is the parent who applied first for aid. Plaintiff alleges the existing regulations contain no mechanism for review or reconsideration of an open CalWORKs case after equal joint custody is granted by the court. There is no provision addressing the delay in eligibility for single fathers due to the requirement for custody to be established by the court.[1] Therefore Plaintiff was not eligible since he was second in time to apply for benefits over a year later through Sacramento County. Therefore, the County properly denied the benefits as stated in the Manual of Policies of Procedures.

Plaintiff appealed the denial, on the grounds that it was inequitable that the first person who applied got CalWORKs where the mother was able to apply while she was pregnant, whereas he had to wait to establish paternity before he could apply for aid. (ECF 9 at 9 and 67) Plaintiff was granted an evidentiary hearing, and following the presentation of evidence, the Administrative Law Judge (ALJ) issued a proposed decision upholding Plaintiff's denial of benefits. The ALJ concluded: (1) Plaintiff failed to submit evidence that he exercises more care and control over his daughter than her mother, (2) Plaintiff's custody agreement did not specify either party as having priority in applying for public assistance, and (3) at the time of Plaintiff's application, the family unit was already receiving CalWORKs benefits through the child's mother in El Dorado County. (ECF 9 at 73)

Plaintiff remains ineligible for CalWORKs benefits even though he now has joint and equal custody, because the mother of his child applied first, successfully, and still receives those benefits. Plaintiff must meet the equal costs of support for his child without the benefit of the public assistance that the mother receives. Plaintiff alleges these regulations unconstitutionally discriminate on the basis of gender and have a disparate impact on disabled, male parents.

### III. LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," and "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a), (d). "[T]he short and plain statement must provide the defendant with fair notice of what the plaintiff's claim

---

[1] Plaintiff was not aware he impregnated the mother of the child approximately 4 months into the pregnancy when he saw a Facebook post. The mother of the child did not want Plaintiff involved with the child and did not contact Plaintiff. As a result, Plaintiff was not present at the hospital for the birth of the child and did not sign the birth certificate to establish his position as the father of the child.

{02499528.DOCX} 5

is and the grounds upon which it rests." Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 346 (2005) (internal citations omitted).

When considering whether a complaint states a claim upon which relief can be granted, the court accepts as true the complaint's factual allegations and construes the complaint in the light most favorable to the plaintiff. Erickson v. Pardus, 551 U.S. 89, 94, 127 (2007); Scheuer v. Rhodes, 416 U.S. 232, 236(1974). In order to avoid dismissal for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 662. A complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007).

## IV. LEGAL ARGUMENT
### A. Plaintiff's First Claim for Relief for Violation of the 14th Amendment Equal Protection Clause Fails to State a Claim for Relief

The Equal Protection Clause of the Fourteenth Amendment requires that similarly situated people be treated alike. City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). Equal protection requirements restrict state legislative action that is inconsistent with bedrock constitutional guarantees, such as equality in treatment. Obergefell v. Hodges, 576 U.S. 644, 673-74(2015). An equal protection claim is established when a plaintiff shows he was treated differently than other similarly situated people on the basis of a suspect classification. City of Cleburne, 473 U.S. at 439-40. "The equal protection analysis under the California Constitution is 'substantially similar' to analysis under the federal Equal Protection Clause." Rui One Corp. v. City of Berkeley, 371 F.3d 1137, 1154 (9th Cir. 2004); Walgreen Co. v. City & County of San Francisco, 185 Cal.App.4th 424, 434 n. 7 (2010).

Plaintiff's SAC fails to plausible allege that he has been deprived of the equal protection of the laws. Plaintiff appears to suggest that he and his child's mother were similarly situated but treated unequally because of gender. Plaintiff alleges that his child's mother was able to apply first for CalWORKs

benefits because, as a pregnant woman, maternity is presumed while as an unmarried man, he was required to determine paternity through a DNA test before he could be eligible for the program.

Here, a mere demonstration of inequality is not enough to demonstrate a constitutional violation; it is a "settled rule that the Fourteenth Amendment guarantees equal laws, not equal results." McQueary v. Blodgett, 924 F.2d 829, 835 (9th Cir. 1991). Plaintiff is equally able to receive CalWORKs benefits as his child's mother. His ability to receive the CalWORKs benefits first is insufficient to demonstrate a constitutional violation. Courts grant states great latitude in dispensing welfare funds. Martin v. Sullivan, 976 F.2d 582, 585 (9th Cir. 1992). Different treatment of classes in social welfare programs does not offend the Constitution simply because it results in some inequality. If the government can demonstrate a challenged provision is rationally related to a legitimate governmental interest, the Court must conclude that it is constitutionally valid. Dandridge v. Williams, 397 U.S. 471, 485 (1970).

CalWORKs is limited to a caregiver for only 48 months. Welf. & Inst. Code § 11454. CalWORKs benefits terminate at the expiration of the term of eligibility or if a recipient no longer meets eligibility criteria. If Plaintiff meets the criteria, he will be permitted to receive CalWORKs benefits once the mother is no longer eligible. There is no illegitimacy in this statutory scheme's application.

Furthermore, a state's determination in how to allot limited public funds is a legitimate interest of the state that cannot be second guessed by the courts. Dandridge, 397 U.S. at 487 [the allocation of public funds is a legitimate state interest]; Valot v. Southeast Local School. District. Board. of Education., 107 F.3d 1220, 1227 (1997) ("Defendants' interest in protecting the public is not only legitimate, but also laudable.").) California has a legitimate interest in relieving "the public burden of supporting the impoverished, and maximizing the benefit payments available for all needy children." County of San Mateo v. Dell J., 46 Cal.3d 1236, 1252–53 (1988). The indirect effect of allowing pregnant women to apply for CalWORKs on a man's ability to apply for that same aid is neither a violation of Equal Protection, nor sufficient to subject the statute to heightened scrutiny. Bowen v. Gilliard, 483 U.S. 587, 602, n.17 (1987) (statute's indirect effects insufficient to raise the level of scrutiny on the CalWORKs program).)

Additionally, Plaintiff attaches Exhibit D (ECF 9 pages 66-73) the California Department of Social Services Administrative Hearing through Administrative Law Judge ("ALJ") Edward Carrillo. The

attached decision establishes that the County properly applied the DSS Manual of Policies and Procedures and determined that since it was undisputed both parents shared 50/50 custody of their child, Man. Pol. & Proc. § 82-808.413(4) requires the County, applying the rules created by the State, to grant benefits to the first parent who applied. This option is the last step to determine who receives CalWORKs benefits and is inherently not a constitutional violation because it is applied to the "first in time." Plaintiff was not treated differently based on his gender—the difference in treatment resulted from a four factor test in which the last factor is time. As such, this policy does not discriminate against similarly situated individuals or cause them to be treated differently based on gender.

Finally, Plaintiff's allegations regarding denial of equal protection (ECF 9 pages 18-19) does not identify which defendants are liable for this alleged wrong and does not provide factual allegations that allow the court to draw the reasonable inference that the specific named defendants are liable for the misconduct alleged. Plaintiff cannot state a cognizable equal protection claims under 42 U.S.C. § 1983 and Art. I, § 7 of the California Constitution. The claim does not allege or address the actions of Defendant Edwards or Dye, or even allege the involvement of the Sacramento County Department of Human Assistance (not a named Defendant in this matter).

### B. Plaintiff's Second Claim for Relief for Violation of the 14th Amendment Due Process Clause Fails to State a Claim for Relief

To state a procedural due process claim, a plaintiff must allege: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections. Kildare v. Saenz, 325 F.3d 1078, 1085 (9th Cir. 2003); Bd. of Regents v. Roth, 408 U.S. 564, 569-70 (1972). The procedural due process protection in the California Constitution exists "to provide affected parties with the right to be heard at a meaningful time and in a meaningful manner." D & M Fin. Corp. v. City of Long Beach, 136 Cal.App.4th 165, 175 (2006) (citations omitted).

To state a substantive due process claim, a plaintiff must allege "a state actor deprived [him] of a constitutionally protected life, liberty, or property interest" in such a way that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty.' " Nunez v. City of Los Angeles, 147 F.3d 867, 871 (9th Cir. 1998) (quoting Rochin v. California, 342 U.S. 165, 172 (1952)). The substantive due process clause "guards against arbitrary and capricious government action, even when the decision to take that action is made through procedures that are in themselves constitutionally

adequate." Halverson v. Skagit Cnty., 42 F.3d 1257, 1261 (9th Cir. 1994) (citation omitted). The substantive due process protection in the California Constitution "prevents government from enacting legislation that is 'arbitrary' or 'discriminatory' or lacks 'a reasonable relation to a proper legislative purpose.' " Kavanau v. Santa Monica Rent Control Bd., 16 Cal.4th 761, 771 (1997) (citation omitted); Cal. Const., Art. I, § 7.

The SAC does not allege Plaintiff was deprived of a constitutionally protected life, liberty or property interest. Plaintiff further has not alleged he was deprived of constitutionally adequate procedural protections, or that any defendant's actions were arbitrary and capricious. Under these circumstances, the complaint fails to state a claim for a due process violation under federal or state law.

**1. Plaintiff does not plead a legally cognizable property interest**

Plaintiff fails to plead facts to establish that he has a property interest in the ancillary educational benefits for CalWORKs recipients. Courts have not recognized a clear, stand-alone property right to higher education. Doe v. White, 440 F. Supp. 3d 1074, 1089 (N.D. Cal. 2020), *aff'd,* 59 F. App'x 76 (9th Cir. 2021) These educational benefits are also predicated on receiving CalWORKs benefits, and Plaintiff does not receive them, Plaintiff also fails to plead facts to establish that he has a property interest in CalWORKs benefits, or the ancillary educational benefits offered through the California Community Colleges system.

**2. Plaintiff Attended an Administrative Hearing Regarding the Denial of Benefits and was Permitted to Present Evidence**

Plaintiff also fails to plead facts that show he was denied adequate procedural protections in the denial of CalWORKs benefits. Plaintiff's Exhibit D establishes that Plaintiff was able to appeal his denial of benefits, present evidence, and have representation at the administrative hearing. The record was kept open for Plaintiff to present more evidence. Plaintiff then received a written decision, citing the facts and law upon which the Department's decision rested. Plaintiff also had the ability to seek review of the denial of benefits through a state court petition for writ of mandate but he did not pursue. (ECF 9 at 75) The record shows a robust procedure and no denial of adequate procedures.

3. **Defendants' did not Deny Plaintiff Due Process Rights**

Plaintiff claims all Defendants' (once again not asserting Defendants' Edwards or Dye directly) "impaired Plaintiffs fundamental liberty interest to establish a home and bring up his child." (ECF 9 at 17) This does not properly assert a substantive due process right. Defendants' have not impaired Plaintiff's fundamental liberty interest to establish a home and raise his child because parents, and not the government, have a duty to care for minor children. Fam. Code § 3900.

Furthermore, Plaintiff's only allegations is against the Department of Human Assistance (not a Defendant in this matter) and states "the Department of Human Assistance is governed by an informal policy whereby intake workers immediately inform male parents definitively that they cannot receive benefits because the child is already receiving them in another household. This creates a pattern of deliberate indifferent to the violation of the male parents right to equal protection and due process. Without exhausting available administrative remedies, male parents are foreclosed to their entitlement to subsequent judicial review of the impairment of their substantive due process rights which Plaintiff is exercising in the instance case." (ECF 9 ¶ 45) These are conclusory allegations and also contradict the evidence attached as Exhibit D to the SAC. On July 25, 2019 Intake workers at the Department of Human Assistance determined Plaintiff could not receive benefits, not because he is a male and based on his gender, but because the mother of the child had already applied for benefits in another county. Since Plaintiff and the mother of the child were unmarried individuals, DSS rules required that the County could not permit both parents to receive CalWORKs benefits. Plaintiff does not name how Defendant Edwards or Dye contributed to this policy, a policy which they do not control because the rules are created by DSS. Furthermore, Defendant Edwards and Dye are not named in this section and no allegations are made regarding their involvement. There are no allegations Defendant Edwards and Dye knew of Plaintiff's case or the denial of his benefits.

Finally, Plaintiff has not demonstrated any conduct by the Defendants that shocks the conscience. Plaintiff's claim of a theorized indifference to the child's financial welfare in Plaintiff's custody, due to the child's mother being entitled to CalWORKs benefits while he does not receive benefits is insufficient and speculative to state a due process claim. Since Plaintiff's child is already receiving benefits through the mother, there is nothing showing indifference or rising to the level of shocking the

conscience of the Court. Plaintiff may receive CalWORKs benefits once the mother becomes ineligible, and there is no claims that Plaintiff was denied adequate due process.

### C. Plaintiff's Third Claim for Relief for Violation of Title IX Deprivation of Equal Educational Opportunity Fails to State a Claim for Relief

Title IX prohibits discrimination on the basis of sex by educational institutions receiving federal financial assistance. 20 U.S.C. § 1681(a). Other than specified exceptions, under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a) (2000). A plaintiff bringing a Title IX claim arising from discrimination based on sex, must show: (1) that the school exercised substantial control over the discrimination or harassment, as well as "the context in which the ... harassment occur[ed]" Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 644-645 (1999); (2) that the harassment was so "severe, pervasive, and objectively offensive" that it deprived plaintiff of access to the "educational opportunities or benefits provided by the school" (3) the school had "actual knowledge of the harassment," and the authority to correct the harassment on the school's behalf and (4) the school's response to that actual knowledge was "clearly unreasonable in light of the known circumstances." Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 739 (9th Cir. 2000)

As a preliminary requirement under the statute's plain language, the federally funded entity must operate an "education program or activity" O'Connor v. Davis, 126 F.3d 112, 118 (2nd Cir. 1997), cert. denied, 522 U.S. 1114, 118 (1998) (holding the 1988 amendments expanding the reach of Title IX to include all departments or branches of an educational institution or program that receives federal funding "did not purport to alter the preliminary requirement that the entity funded operate an 'education program.' "). The definition of a "program or activity" under Title IX is broad. It encompasses the operations of a "department, agency, special purpose district, or other instrumentality of a State or of a local government;" a local educational agency; an "entire corporation, partnership, or other private organization, or an entire sole proprietorship;" and any other entity that is established by two or more of the foregoing entities. 20 U.S.C. § 1687.

Plaintiff alleges CalWORKs provides education programs through California's community colleges, which offer targeted programs for students receiving CalWORKs benefits. Plaintiff alleges the

discriminatory implementation of the CalWORKs program results in single mothers receiving more educational resources than single fathers. To illustrate disparity between male and female parents participating in CalWORKs community college programs, plaintiff attaches the CalWORKs Status Summary Report for the 2020 academic year as Exhibits G, H, and I to the complaint. Plaintiff further alleges the challenged educational policies discriminate by allowing an unmarried mother to include her child in her Free Application for Federal Student Aid ("FAFSA") application every year based on her CalWORKs household determination, while an unmarried father with equal and joint custody can only include his child in his household for the year(s) that he has a qualifying child base on IRS regulations.

The SAC does not contain sufficient factual allegations to show that Defendants Edwards or Dye is plausibly liable for the alleged wrongs. In fact, even the Department of Human Assistance is not named in the body of third claim for relief. In order to state a valid Title IX claim, Plaintiff must identify the Defendants liable for the alleged wrongs and link them to the harm suffered by setting forth the specific actions or omissions of those defendants that plausibly show they are liable for the alleged violations. He has not done so here, and has not alleged any facts how Defendants Edwards or Dye are linked to the denial of his constitutional rights. He has not shown actual knowledge of any alleged discrimination, or the authority to correct it. Plaintiff alleges only that that all the Defendants (without naming Edwards or Dye) should have known that the CalWORKs program was discriminatory and violated Title IX because of the "low participation" of men in the program. This is not enough to meet the burden.

Finally, Plaintiff also fails to plead facts sufficient to show that discrimination on the basis of his sex was so "severe, pervasive, and objectively offensive" that he was deprived access to the "educational opportunities or benefits provided by the school." Davis, 526 U.S. at 650. As such, this claim fails.

**D. Plaintiff's Fourth Claim for Relief for Violation of California Constitution Equal Protection Clause Fails to State a Claim for Relief**

For the reasons described under Section IV(A), Plaintiff's state law claim for violation of the equal protection clause fails to state a claim for relief. The complaint does not identify Defendants Edwards or Dye by name, their involvement in Plaintiff's state constitutional claims, their knowledge

regarding Plaintiff's denial of benefits, or how they created a policy at the County to deny Plaintiff's application. The SAC only contains bare bone conclusory allegations and is not plead with enough specificity against Defendants Edwards and Dye. As such, this claim should be dismissed.

### E. Plaintiff's Fifth Claim for Relief for Violation of California Constitution Due Process Clause Fails to State a Claim for Relief

For the reasons described under Section IV(B) and (D), Plaintiff's state law claim for violation of the due process clause fails to state a claim for relief.

### F. The 11th Amendment Provides Immunity to Defendants' Edwards and Dye in their Official Capacity

Under the 11th Amendment to the United States Constitution, "[t]e Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of Another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The 11th Amendment provides a state with immunity from suit in federal court by citizens of other states. Lapides v. Bd. Of Regents of Univ. Sys. of Ga., 535 U.S. 613 (2002). The United States Supreme Court has interpreted the 11th Amendment to extend to immunity from suit by a state's own citizens, as well. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99-100 (1984) ("An unconsenting state is immune from suits brought in federal court by her own citizens as well as by citizens of another state.").

The 11th Amendment immunity applies to the state itself and to state agencies, departments, and other "arms of the state." Regents of the Univ. of Cat v. Doe, 519 U.S. 425, 429 (1997); Pennhurst State School & Hosp. v. Halderman, supra, 465 U.S. at 100; Alden v. Maine, supra, 527 U.S. at 756-757). A county agency may be an "arm of the state..[such to] afford 11th Amendment immunity. Regents of the Univ. of Cal. v. Doe, supra, 519 U.S. at 429.

In Mitchell v. Los Angeles Community College District, 861 F.2d 198 (9th Cir. 1988), the 9th Circuit set out five factors for determining whether a government entity, and its employees acting in an official capacity, is an arm of its state for 11th Amendment immunity purposes: (1) "whether a money judgment would be satisfied out of state funds"; (2) "whether the entity performs central governmental functions"; (3) "whether the entity may sue or be sued"; (4) "whether the entity has the power to take property in its own name or only the name of the state"; and (5) "the corporate status of the entity." 861 F.2d at 201. "To determine these factors, the court looks to the way state law treats the entity." Id.

First, any money judgment should be paid directly with State funds because the County, and its employee Defendants' acting in their official capacity, are acting as agents for the State in determining whether an individual applies and meets the criteria for CalWORKs. It is undisputed based on Plaintiff's operative complaint that the County has not assessed additional requirements or regulations on top of the MPP and the County (through Defendants' Edwards and Dye) act only in determining whether a party can receive benefits paid via the state.

As to the second Mitchell factor—whether the County performs central governmental functions—courts look at whether the County addresses "a matter of statewide rather than local or municipal concern, and the extent to which the state exercises centralized governmental control over the entity." Beentjes v. Placer Cty. Air Pollution Control Dist., 397 F.3d 775, 782 (9th Cir. 2005). Here, it is undisputed the County is serving central government functions for the State of California through processing applications for CalWORKs—an issue of state control.

As to the remaining factors, while Defendants' Edwards and Dye can be sued, they are not the proper individual to be sued based on the above discussion. Fourth, Defendants' Edwards and Dye do not have the power to take property in their own name and this factor favors 11th Amendment immunity. Finally, Defendants' Edwards and Dye are merely an agency for the state without an identity that is separate from the state and as such this factor favors 11th Amendment immunity.

Therefore, the Court should grant 11th Amendment immunity for Defendants' Edwards and Dye to the extend the claims allege involvement based on their official capacity.

## V. **DEFENDANTS' ARE ENTITLED TO QUALIFIED IMMUNITY**

Defendants are entitled to qualified immunity regarding Plaintiff's federal law claims under Section 1983. In determining whether a Defendant is entitled to qualified immunity, the Court considers: (1) whether there has been a violation of a constitution right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct. C.V. by and through Villegas v. City of Anaheim, 823 F.3d 1252, 1255 (9th Cir. 2016). The Supreme Court has pointed out that courts may determine which prong of qualified immunity they should analyze first. Pearson v. Callahan, 555 U.S. 223, 236-237 (2009). Addressing the second prong before the first is especially appropriate where the court will rather quickly and easily decide there is no violation of clearly established law. Id. at 239. Qualified immunity is a question of law to be

decided by the court. Hunter v. Bryant, 502 U.S. 224, 228 (1991); Torres v. City of Los Angeles, 548 F.3d 1197, 1210 (9th Cir. 2008). The plaintiff bears the burden of showing that the rights allegedly violated were clearly established. Shafer v. County of Santa Barbara, 868 F.3d 1110, 1118 (9th Cir. 2017).

Plaintiff has not satisfied the first prong of qualified immunity, requiring a violation of a statutory or constitutional right. Even if the Court proceeds to the second prong of analysis, qualified immunity provides immunity because the right to CalWORKs benefits was not clearly established at the time of the challenged conduct. CalWORKs is a form of government aid to help families provide for their own "economic security by full participation in the work force to the extent possible." Welf. & Inst. Code § 11205. It was not clearly established that Plaintiff had a property or liberty interest in enrollment in a public higher education program or rights to CalWORKs benefits.

## VI. CONCLUSION

Plaintiff's Second Amended Complaint fails to state any claims for relief against Defendants' Edwards and Dye and this Court should dismiss Plaintiff's complaint without leave to amend. Plaintiff has already been permitted to file multiple complaints and the pleadings establish he cannot assert claims against Defendants' Edwards and Dye. First, the Second Amended Complaint fails to every state Defendants' Edwards and Dye name beyond the caption page and does not assert their involvement or knowledge with the denial of his claim. Secondly, the attached exhibits establish undisputed facts that the County through the Department of Human Assistance operated within the rules established by the State and MPP in denying Plaintiff CalWORKs benefits, and that the denial was not based on Plaintiff's gender but rather the timing in which he applied for those benefits. Finally, the Court should grant 11th Amendment immunity to Defendants' Edwards and Dye for their official capacity actions because Defendants were only acting as agents of the state in denying the benefits and were not acting as County employees in the denial of the benefits.

For the foregoing reasons, the Court should grant Defendants' Motion to Dismiss in its entirety.

Dated: November 10, 2021
PORTER SCOTT
A PROFESSIONAL CORPORATION

By /s/ *Carl L. Fessenden*
    Carl L. Fessenden
    Matthew W. Gross
    Attorneys for Defendants


*Reedy v. Gavin Newson, et al.*
**U.S.D. C. – Eastern District Court Case No. 2:21-cv-00223-TLN-CKD**

**DECLARATION OF SERVICE**

I am a resident of the United States and of the County, of Sacramento, California. I am over the age of eighteen years and not a party to the within above-entitled action. My business address is 350 University Avenue, Suite 200, Sacramento, California.

I am familiar with this Company's practice whereby the mail, after being placed in a designated area, is given the appropriate postage and is deposited in a U.S. mailbox in the City of Sacramento, California, after the close of the day's business.

That on the date below, I served the following: **ANN EDWARDS AND ETHAN DYE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS** on all parties in the said action as addressed below by causing a true copy thereof to be served:

| | |
|---|---|
| **xx** | **BY MAIL:** I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. |
| | **BY PERSONAL SERVICE:** I caused such document to be personally delivered to the person(s) addressed below. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening. |
| | **BY OVERNIGHT DELIVERY:** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the person(s) listed below. I placed the envelope or package for collection and overnight delivery at my office or a regularly utilized drop box of the overnight delivery carrier. |
| | **BY FAX TRANSMISSION:** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached |
| | **BY ELECTRONIC SERVICE**: Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification address listed below. |

***In-Pro Per***
Justin G. Reedy
7295 Amherst Street
Sacramento, CA 95822
Tel: (916) 428-1510

I declare under the penalty of perjury that the foregoing is true and correct. Executed at Sacramento, California, on November 10, 2021.

    /s/ *Kristena Champlin*
Kristena Champlin