UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN G. REEDY,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF CALIFORNIA, et al.,<br><br>Defendants. | No. 2:21-cv-0223-TLN-CKD (PS)<br><br>FINDINGS AND RECOMMENDATIONS<br><br>(ECF Nos. 16, 17) |

Plaintiff Justin G. Reedy proceeds pro se with a civil rights action under 42 U.S.C. § 1983. This matter was referred to the undersigned pursuant to Local Rule 302(c)(3). See 28 U.S.C. § 636(b). Motions to dismiss filed by the defendants are before the court. (ECF Nos. 16, 17.) The parties appeared via videoconference for a hearing on January 12, 2022. Plaintiff appeared pro se. Attorney Julia R. Jackson appeared on behalf of defendants Oakley, Ghaly, and Johnson. Attorney Matthew Gross appeared on behalf of defendants Edwards and Dye. For the reasons set forth below, it is recommended that the court grant both motions to dismiss.

I.     **BACKGROUND**

Plaintiff seeks redress for alleged injuries resulting from the denial of benefits for himself and his daughter under the California Work Opportunity and Responsibility to Kids Act (CalWORKs). Plaintiff alleges that existing statutes, regulations, policies and procedures for the

1

implementation of that program preclude single fathers from having equal access to public benefits intended for the support and care of dependent children, and thus that the regulatory framework discriminates on the basis of gender.

### A. Statutory Framework

California's CalWORKs program, the State's version of the federal Temporary Assistance for Needy Families (TANF) program, is an aid program for families with a child or children deprived of parental support or care due to the unemployment or absence of one or more parents. Cal. Welf. & Inst. Code §§ 11200, 11201, 11205. CalWORKs provides monthly cash and ancillary benefits to parents or relative caretakers in need who are pursuing education to improve employment opportunities. (Id.) In addition to meeting certain income criteria, applicants must demonstrate they (1) are a related parent or caretaker of a child and (2) are responsible for the child's regular care. California Department of Social Services Manual of Policy and Procedures ("MPP"[1]) §§ 82-804.1, 82-808.1, 82-808.3. Once approved for CalWORKs, the participating parents or caretakers are required to work or attend school with certain exceptions. Cal. Welf. Inst. Code § 11323.2. CalWORKs then provides certain ancillary benefits to aid parents or caretakers seeking education or employment such as childcare, transportation, and school books. MPP §§ 47-750.111, 47-750.112, 47-750.113. The California Department of Social Services oversees administration of the CalWORKs program by the individual counties which determine applicant eligibility in accordance with Department of Social Services' rules. Cal. Welf. & Inst. Code §§ 10553, 10600, 10604.

CalWORKs aid is provided for a limited time period; under the current law an applicant parent or caretaker can generally receive CalWORKs benefits for up to 48 months. Cal. Welf. & Inst. Code § 11454. However, the 48-month lifetime limit for CalWORKs benefits will soon be increased to 60 months. See California Assembly Bill 135, Chapter 85, Statutes of 2021.

////

---

[1] Available online at https://www.cdss.ca.gov/inforesources/letters-regulations/legislation-and-regulations/calworks-calfresh-regulations/eligibility-and-assistance-standards, last visited 01/10/22.

In situations where two CalWORKs applicants share custody of a child and live separately, the county goes through a multi-step process to determine eligibility. First, the county looks to which caretaker exercises more of the routine responsibilities for the child. MPP § 82-808.3. Where custody and the childcare responsibilities are shared equally by two parents, the county will next look to a formal custody agreement to determine whether one parent is designated as the presumptive recipient for aid. MPP § 82-808.413(a). Where no such order exists, and the parents cannot agree on who may receive CalWORKs, the regulations hold the parent who applies first for aid will receive it. MPP § 82-808.413(d). Pregnant applicants may be eligible to receive aid during pregnancy for the month in which the birth is anticipated and for the six-month period immediately prior. Cal. Welf. & Inst. Code § 11450(a)(1)(B).

After the term of aid to the first parent ends or the first parent otherwise loses eligibility, then the second parent may receive CalWORKs benefits. MPP §§ 82-808.413(b); 82-808.5. Thus, in situations where parents share equal custody of a child, and one parent was granted aid for applying first, the second eligible parent can apply for and receive CalWORKs aid when the aid to the first parent ends. Id. The second parent would then receive cash aid and any ancillary CalWORKs benefits relevant to that parent's employment or educational activities. Cal. Welf. & Inst. Code § 11323.2.

**B. Factual Allegations and Plaintiff's Claims**

Plaintiff applied for CalWORKs cash-aid on behalf of himself and his daughter in July of 2019 and was denied. (ECF 9 at 9, 26.) Plaintiff and the child's mother share 50/50 custody of the child and neither party was designated as having priority in applying for public assistance. (Id. at 8.) At the time of his application, Sacramento County determined plaintiff was ineligible for CalWORKs aid because the child and her mother were already receiving aid. (Id. at 9.) Plaintiff appealed the denial but was unsuccessful. (Id. at 9, 66-67.) The California Department of Social Services adopted the proposed decision on February 3, 2020. (Id. at 66.)

Plaintiff filed the operative second amended complaint on August 13, 2021. (ECF No. 9.) Plaintiff brings the following claims: (1) Violation of Equal Protection Clause under the Fourteenth Amendment; (2) Violation of Due Process Clause under the Fourteenth Amendment;

3

(3) Violation of Title IX of the Educational Amendments of 1972; (4) Violations of the California Constitution, Art. I, § 7 – Equal Protection and Due Process.

### C. Defendants' Motions to Dismiss

In separately filed motions, defendants move to dismiss the second amended complaint, arguing the allegations fail to state a claim upon which relief can be granted and that they are entitled to Eleventh Amendment immunity and qualified immunity. (ECF No. 16, 17.) Plaintiff has opposed the motions and the moving defendants have filed replies. (ECF No. 30, 32, 34, 36.)

## II. LEGAL STANDARD FOR A MOTION TO DISMISS

Dismissal under Rule 12(b)(6) may be warranted for "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In evaluating whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989). In addition, a pro se plaintiff's pleadings are liberally construed. See Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987) (citing Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam).

In order to state a valid claim for relief, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Such a claim has sufficient factual content to allow a reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "[R]ecitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice[.]" Id. at 676.

## III. DISCUSSION

### A. Due Process

#### 1. Procedural Due Process

In order to state a procedural due process claim, a plaintiff must allege: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections. Kildare v. Saenz, 325 F.3d 1078, 1085 (9th Cir. 2003); see Bd. of Regents v. Roth,

4

408 U.S. 564, 569-70 (1972). Thus, the court first considers whether plaintiff has adequately alleged a protected liberty or property interest and, if so, the extent or scope of that interest. See Roth, 408 U.S. at 569-70.

Plaintiff alleges he has a constitutionally protected property interest in CalWORKs benefits and the ancillary educational benefits provided for CalWORKs recipients. (ECF No. 9 at 31.) Defendants counter that plaintiff has no state-law property right to CalWORKs benefits because he did not qualify for those benefits. (ECF No. 16-1 at 17; ECF No. 17-1 at 10.) Defendants also assert neither the Supreme Court nor the Ninth Circuit have recognized a clear, stand-alone property right to higher education. (Id.)

The court looks to state law to determine whether a plaintiff has a property interest protected by procedural due process. Portman v. County of Santa Clara, 995 F.2d 898, 905 (9th Cir. 1993). Recipients of public benefits have a protected property right in those benefits when a statute authorizes the benefits and the "implementing regulations" "greatly restrict the discretion" of the people who administer those benefits to the extent that a "legitimate claim of entitlement" is created. Nozzi v. Hous. Auth. of City of Los Angeles, 806 F.3d 1178, 1190-91 (9th Cir. 2015), as amended on denial of reh'g and reh'g en banc (Jan. 29, 2016) (quoting Griffeth v. Detrich, 603 F.2d 118, 121 (9th Cir. 1979)). If a recipient of government benefits has a strong interest in maintaining benefits being received, then the benefits cannot be terminated without due process. Goldberg v. Kelly, 397 U.S. 254, 264-69 (1970) (government could not terminate welfare benefits without due process).

Here, plaintiff has never received the CalWORKs benefits at issue. This is not a situation where he was receiving continuing CalWORKs benefits and the State attempted to terminate them. Nor is it a situation where plaintiff has a legitimate claim of entitlement based on the existing eligibility requirements. Rather, under plaintiff's allegations, he cannot receive CalWORKs benefits while the mother of his child is receiving them. On this basis, his initial application was denied. No property interest is implicated under such circumstances. See Waugh v. Conn. Student Loan Found., 966 F. Supp 141, 144 (D. Conn. 1997) (explaining the difference between the denial of an initial application and termination of existing benefits in the procedural

5

due process context).

Plaintiff has no legitimate claim of entitlement to CalWORKs benefits under the applicable California statutes and agency rules. Accordingly, he does not have a state-law property interest protected by procedural due process.

### 2. Substantive Due Process

To state a substantive due process claim, a plaintiff must allege "a state actor deprived [him] of a constitutionally protected life, liberty, or property interest" in such a way that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty.'" Nunez v. City of Los Angeles, 147 F.3d 867, 871 (9th Cir. 1998) (quoting Rochin v. California, 342 U.S. 165, 172 (1952)). Substantive due process protects fundamental rights under the federal constitution that are 'deeply rooted in this Nation's history and tradition.'" Franceschi v. Yee, 887 F.3d 927, 937 (9th Cir. 2018). These include marriage, procreation, contraception, family relationships, child rearing, education and a person's bodily integrity. Id.

Plaintiff alleges defendants have impaired his fundamental liberty interest to establish a home and bring up his child. (ECF No. 9 at 17.) While child-rearing is a fundamental liberty interest, plaintiff cannot show defendants have deprived him of this interest in a way that shocks the conscience. "[A] legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right." Rust v. Sullivan, 500 U.S. 173, 193 (1991) (quoting Regan v. Taxation with Representation of Washington, 461 U.S. 540, 549 (1997). "A refusal to fund protected activity, without more, cannot be equated with the imposition of a 'penalty' on that activity." Rust, 500 U.S. at 549 (citing Harris v. McRae, 448 U.S. 297, 317 n.19 (1980).) Because plaintiff fails to allege the state has deprived him of his right to exercise a fundamental liberty interest, he cannot state a substantive due process claim based on the denial of CalWORKs benefits.

### B. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment requires that similarly situated people be treated alike. City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). Equal protection requirements restrict state legislative action that is inconsistent with equality in

treatment. See Obergefell v. Hodges, 576 U.S. 644, 673-74 (2015). Unless the government targets a suspect class or burdens the exercise of a fundamental right, neither of which is at issue here, the challenged classification need only be rationally related to a legitimate government purpose. United States R.R. Retirement Bd. v. Fritz, 449 U.S. 166, 174-76 (1980); Martin v. Sullivan, 976 F.2d 582, 584 (9th Cir. 1992).

Defendants' arguments for dismissal assume that no heightened level of scrutiny applies. (ECF No. 16-1 at 19-20; ECF No. 17-1 at 12-13.) Plaintiff, in contrast, argues for heightened scrutiny and notes the Supreme Court has applied intermediate scrutiny to gender discrimination claims. (See ECF No. 35 at 25-26.) Under intermediate scrutiny, if a legislative distinction is based on a semi-suspect classification, such as gender, then a statute will be upheld if the government can demonstrate the classification "substantially furthers an important government interest." Green v. City of Tucson, 340 F.3d 891, 896 (9th Cir. 2003).

In Personnel Administrator of Massachusetts v. Feeney, 442 U.S. 256 (1979), the Supreme Court established the analytical framework for assessing equal protection challenges to classifications which are gender-neutral on their face but which have a disparate impact. "The first question is whether the statutory classification is indeed neutral in the sense that it is not gender-based. Tucson Woman's Clinic v. Eden, 379 F.3d 531, 548 (9th Cir. 2004) (citing Feeney, 442 U.S. 256, 274 (1979).) If the classification itself is not overtly or covertly based upon gender, then the second question is whether the adverse effect reflects "invidious gender-based discrimination." Id. Invidious gender-based discrimination is reflected by the appearance of purposeful discrimination. See Feeney, 442 U.S. at 274.

Here, the challenged classification is neutral in the sense that it is not gender-based. It further does not reflect invidious gender-based discrimination because there is no plausible suggestion of purposeful discrimination. See Feeney, 442 U.S. at 274 (noting that while impact provides an "important starting point," purposeful discrimination is "the condition that offends the Constitution."). Without proof of intentional invidious discrimination, courts will not invalidate a law, neutral on its face and serving otherwise legitimate ends, that happens to have a greater effect on one group than on another. See Washington v. Davis, 426 U.S. 229, 242 (1976).

1    Here, although plaintiff concludes there is purposeful discrimination, purposeful
2    discrimination is not plausibly inferred from the challenged statute. "[T]he purposes of the statute
3    provide the surest explanation for its impact." Feeney, 442 U.S. at 275. The purpose of allowing
4    pregnant applicants to apply for aid is not to discriminate against men, but rather, to distribute
5    benefits to needy children and families. See Cal. Welf. & Inst. Code § 11450(a)(1)(B). The
6    applicable statute does not reflect invidious gender-based discrimination even if it results in
7    unequal impact on unwed mothers and fathers.

8    The CalWORKs scheme and the challenged classification itself is rationally related to a
9    legitimate government purpose. In the area of economics and social welfare, federal law gives
10   each state great latitude in dispensing available welfare funds. Martin, 976 F.2d at 585. A state
11   does not violate the Equal Protection Clause merely because the classifications made by its laws
12   are imperfect and result in inequalities. Dandridge v. Williams, 397 U.S. 471, 485 (1970). "[T]he
13   Constitution does not require *identical* treatment." McQueary v. Blodgett, 924 F.2d 829, 835 (9th
14   Cir. 1991) (emphasis in original). A "mere demonstration of inequality" is not enough to state an
15   equal protection claim. Id.

16   It is true that plaintiff may not receive CalWORKs benefits while the mother of his child
17   is receiving them. However, it is enough that the state's action be rationally based and free from
18   invidious discrimination. The CalWORKs scheme meets this test, as the allocation of public
19   funds is a legitimate state interest. See Dandridge, 397 U.S. at 487; see also McQueary, 924 F.2d
20   at 835 n.17 (noting the rational basis test "has rarely been utilized… to invalidate a state
21   provision, and normally gives great deference to the validity of the questioned provision").

22   As previously noted, CalWORKs aid is limited, and is generally available to a caregiver
23   for a limited period of time, which is currently 48 months. Cal. Welf. & Inst. Code § 11454.
24   Plaintiff alleges the child's mother began receiving CalWORKs benefits in 2018 when the child
25   was born, and has been receiving the benefits since that time. (ECF No. 9 at 5.) Because
26   CalWORKs benefits terminate at the expiration of the term of eligibility or if a recipient no
27   longer meets eligibility criteria, plaintiff will have the opportunity to receive CalWORKs benefits
28   when the child's mother is no longer receiving them if he remains financially eligible. See MPP

§§ 82-808.413(b), 82-808.5.

The court does not determine that the CalWORKs scheme fulfills the relevant social and economic objectives in the best way possible, or that a more just system toward unwed fathers could not be devised. But the intractable economic, social, and even philosophical problems presented by public welfare assistance programs are not the business of the courts. See Dandridge, 397 U.S. at 487. Under the circumstances, there is no "invidiousness or illegitimacy in the statutory scheme." McQueary, 924 F.2d at 835. The indirect effect of allowing pregnant women to apply for CalWORKs on a man's ability to apply for that same aid does not violate equal protection.

**C. Title IX**

Title IX prohibits discrimination on the basis of sex by educational institutions receiving federal financial assistance. Other than specified exceptions, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a) (2000). The definition of a "program or activity" under Title IX is broad and encompasses all the operations of a "department, agency, special purpose district, or other instrumentality of a State or of a local government[.]" 20 U.S.C. § 1687; see also 34 C.F.R. § 106.2(h). Title IX expressly confers an administrative means of enforcement, see id. § 1682, and impliedly confers a private right of action. See Cannon v. Univ. of Chicago, 441 U.S. 677, 717 (1979).

Because Title IX encompasses diverse forms of intentional sex discrimination with differing pleading standards, see Jackson v. Birmingham Bd. of Education, 544 U.S. 167, 183 (2005), the question arises which standard to apply. Here, the alleged discrimination is not in the context of a disciplinary proceeding, see Schwake v. Arizona Board of Regents, 967 F.3d 940, 946-47 (9th Cir. 2020), or retaliation, see Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 183 (2005). The implementing regulations applicable to athletics likewise do not apply. See 34 C.F.R. § 106.41.

////

In Davis v. Monroe County Board of Education, 526 U.S. 629 (1999), cited and argued in both of the defendants' motions to dismiss (ECF No. 16-1 at 20-22; ECF No. 17-1 at 12-13), the Supreme Court reiterated its holding in Gebser v. Lago Vista Indep. School Dist., 524 U.S. 274 (1998) that a recipient of federal funds may be liable for damages under Title IX only if it itself causes the constitutional violation at issue. Davis, 526 U.S. at 643. Addressing student on student harassment claims, the Court concluded that if a funding recipient does not engage directly in the harassment, then it may be held liable only if it "acts with deliberate indifference to known acts of harassment in its programs or activities." Id. at 633. At least one court has determined the holdings of Gebser and Davis would apply to non-harassment Title IX claims. See Phillips v. Anderson Cty. Bd. of Educ., No. 3:06-cv-35, 2006 WL 3759893, at *12 (E.D. Tenn. Dec. 19, 2006), aff'd, 259 F. App'x 842 (6th Cir. 2008).

Under the framework of Gebser and Davis, plaintiff's Title IX claim fails because there is no plausible inference of deliberate indifference. Plaintiff alleges CalWORKs provides education programs through California's community colleges, which offer targeted programs for students receiving CalWORKs benefits. Plaintiff alleges the discriminatory eligibility requirements of the CalWORKs program results in single mothers receiving more educational resources than single fathers. To illustrate disparity between male and female parents participating in CalWORKs community college programs, plaintiff provides the CalWORKs Status Summary Report for the 2020 academic year. Plaintiff further alleges the challenged educational policies discriminate by allowing an unmarried parent receiving CalWORKs benefits to include the child in the Free Application for Federal Student Aid ("FAFSA") application every year, while an unmarried parent with equal and joint custody who is not receiving CalWORKs benefits can only include the same child for the year(s) with a qualifying child base on IRS regulations.

Assuming defendants are aware of these facts, no deliberate indifference is shown. The deliberate indifference standard has considerable bite: it demands that a funding recipient be shown to have had actual knowledge of the alleged discrimination. See Davis, 526 U.S. at 642. Although plaintiff here alleges purposeful discrimination, this is an unwarranted conclusion not established by the facts. See Twombly, 550 U.S. at 555 (labels and conclusions do not suffice to

state a claim). As noted earlier, the purpose of allowing pregnant applicants to apply for aid is not to discriminate against men, but rather, to distribute benefits to needy children and families. See Cal. Welf. & Inst. Code § 11450(a)(1)(B). Under the circumstances, there is no plausible inference of any defendant's deliberate indifference to known discrimination.

Moreover, the allegations do not plausibly allege unequal treatment "on the basis of sex." 20 U.S.C. § 1681(a). Plaintiff is not denied participation in the CalWORKs community college programs on the basis of his sex; rather, he is denied participation at this time because he does not meet the eligibility requirements which, as set forth above, are gender-neutral. Though plaintiff alleges a disparity in the numbers of male and female parents participating in CalWORKs community college programs, this does not show a disparity in treatment. There is no allegation that male participants in CalWORKs community college programs are treated differently than female participants. Under these circumstances, plaintiff fails to state a cognizable Title IX claim.

### D. State-Law Claims

If it is determined that plaintiff sufficiently alleged a federal claim, then the court will consider exercising supplemental jurisdiction over plaintiff's state law due process and equal protection claims. However, because it is being recommended that all federal claims be dismissed, the undersigned will recommend the court decline to exercise supplemental jurisdiction over the state-law claims.

### E. Leave to Amend

The undersigned has carefully considered whether leave to amend should be granted. While leave to amend should be "freely given when justice so requires," Fed. R. Civ. P. 15(a), here the deficiencies in the claims cannot be cured by the allegation of additional facts. Accordingly, leave to amend would be futile. See Lucas v. Dep't of Corrs., 66 F.3d 245, 248 (9th Cir. 1995).

### IV. CONCLUSION

In accordance with the above, IT IS RECOMMENDED:

1. The motion to dismiss by defendants Oakley, Ghaly and Johnson (ECF No. 16) be granted;

11

2. The motion to dismiss by defendants Edwards and Dye (ECF No. 17) be granted;

3. Plaintiff's second amended complaint be dismissed without leave to amend; and

4. The Clerk of the Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within 14 days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the district court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated:  January 14, 2022

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

8.Reedy.21cv223.mtd